UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA


SHEILA GUIDRY, *individually and*                         CIVIL ACTION
*on behalf of all others similarly*
*situated*, ET AL.


v.                                                        NO. 19-12233


DOW CHEMICAL COMPANY, ET AL.                              SECTION "F"


ORDER AND REASONS

Before the Court is the plaintiffs' second motion to remand this class action to state court.  For the reasons that follow, the motion is DENIED.

**Background**

This protracted class action stems from the accidental release of toxic chemicals from a Union Carbide facility in 2009. Now, a full decade after the incident at issue, the defendants have removed the action to this Court for a second time, and the plaintiffs have again moved to remand the action to state court for a lack of federal subject matter jurisdiction.  For all the complexity inherent in a litigation spanning an entire decade, the instant motion turns entirely on one narrow issue: whether the plaintiffs' suit has placed an amount exceeding $5,000,000 in

1

controversy such that federal jurisdiction is proper under the Class Action Fairness Act (CAFA).

Unfortunately, some issues are simpler in theory but tougher in application. Such is the case here, where the parties have twisted themselves into proverbial pretzels in hopes of achieving victory in this latest pitched battle over jurisdiction. In an ironic reversal of traditional roles, the plaintiffs attempt to persuade the Court that their claims are in fact *less* valuable than the statutory threshold, while the defendants argue that the plaintiffs' claims are potentially worth considerably *more*. On this decisive issue, the parties espouse starkly opposing views.

Stuck in between the plaintiffs' "rock" and the defendants' "hard place," the Court finds that a preponderance of the evidence suggests that the amount in controversy in this case does exceed $5,000,000. As a result, the Court is bound to accept the defendants' properly effected removal and must deny the plaintiffs' motion to remand.

I.

"Within constitutional bounds, Congress decides what cases the federal courts have jurisdiction to consider." Bowles v. Russell, 551 U.S. 205, 212 (2007). With a small handful of exceptions articulated in Article III of the Constitution, a federal court's jurisdiction begins and ends where Congress says.

See <u>Gunn v. Minton</u>, 568 U.S. 251, 256 (2013).  Here, the removing defendants assert that Congress's 2005 enactment of CAFA enables the Court to resolve the plaintiffs' class action.  The plaintiffs argue that CAFA does not apply and that this case consequently falls beyond the Court's limited jurisdiction.

A.

CAFA furnishes the federal district courts with original jurisdiction over class actions involving a class of at least 100 members, minimally diverse parties, and an amount in controversy exceeding $5,000,000.  <u>See</u> 28 U.S.C. § 1332(d).  In this case, there is no question that the plaintiffs' class boasts 100 members and that some plaintiffs are diverse from some defendants. Therefore, the sole and dispositive question at issue is the amount in controversy.

The parties have briefed this narrow question extensively. Almost all of their jockeying is rooted in pure conjecture: conjecture over how many potential class members might exist, conjecture over what the claims of those potential class members might be worth, conjecture over future litigation plans, conjecture over the meaning and significance of communications made in the course of prior settlement talks, and the list goes on.

3

In their competing presentations, the parties skillfully guide the Court down sharply divergent paths. The plaintiffs surmise that their claims fall well short of $5,000,000 in value, while the defendants counter that the plaintiffs' claims fall somewhere in the range of $7.5 million (at the lowest conceivable end) to $275 million. This leaves the Court the unenviable task of valuing an amount in controversy that cannot possibly be pinpointed with any modicum of certainty at this point.[1]

Fortunately for the Court, the Supreme Court's decision in Dart Cherokee Basin Operating Co. v. Owens steps into the void and supplies a helpful analytical roadmap. See 574 U.S. 81 (2014). Dart Cherokee instructs that "when a defendant seeks federal-court adjudication, the defendant's amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by the court." Id. at 87. Here, the defendants' alleged amount in controversy is both contested by the plaintiffs *and* questioned by the Court. Thus, Dart Cherokee instructs, "both sides" are to "submit proof" and the Court is to "decide[], by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." Id. at 88.

---

[1]    Indeed, it is impossible at this stage to determine with any certainty how many plaintiffs may truly exist in this mass tort action, or the proper measure of damages needed to make such a diverse and unknowable class of plaintiffs whole.

In rendering its decision on that issue, the Court must also remember that "no antiremoval presumption attends cases invoking CAFA, which Congress enacted to *facilitate* adjudication of certain class actions in federal court."  Id. at 89 (emphasis added); see also Standard Fire Ins. Co. v. Knowles, 568 U.S. 588, 595 (2013) (observing that "CAFA's primary objective" is "ensuring 'Federal court consideration of interstate cases of national importance'" (quoting CAFA § 2(b)(2), 119 Stat. 5)).  This statutorily codified legislative objective motivated a majority of the Dart Cherokee Court to cite legislative history suggesting that "CAFA's 'provisions should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant.'"  Dart Cherokee, 574 U.S. at 89 (quoting S. Rep. No. 109-14, p. 43 (2005)).[2]

Thus, with the foregoing framework as its analytical guide, the Court proceeds to weigh the evidence on the single issue before it.

---

[2]    While this Court has its own well-articulated doubts about the legal significance of legislative history, the decision of a majority of the Supreme Court to embrace and adopt this particular piece of legislative history in Dart Cherokee must be regarded with due deference and significance.

5

B.

As noted above, the "world according to the plaintiffs" and the "world according to the defendants" are very different places. The plaintiffs contend that the Court is compelled to remand their class action because while *they* have made a compelling case – refined by good-faith jurisdictional discovery and reasonable application of the "Howard" damages range[3] identified by the Court as a possible proxy for estimating damages here – that the amount in controversy does *not* exceed $5,000,000, the defendants "have offered no actual evidence – no proof – showing that the amount-in-controversy requirement *has* been satisfied."   See Reply at 2, 3-4 (emphasis added).[4]

---

[3]    See Howard v. Union Carbide Corp., 50 So. 3d 1251 (La. 2010).

[4]    Indeed, the plaintiffs *have* made a compelling case for their view, and they have undoubtedly performed the jurisdictional discovery obligations imposed upon them by this Court's May 13, 2020 order in a stellar fashion.   For a description of the plaintiffs' admirably robust discovery efforts, see Mot. 1-7.

As a result of those efforts, the plaintiffs have identified 5456 "individually-identifiable" claimants. Id. at 16.  Acknowledging the "Howard" damages range of $100-$500 per claimant as a helpful starting point, the plaintiffs calculate that even in a scenario in which each presently knowable claimant were awarded the highest *inflation-adjusted* amount of damages allowed by the Howard court, the total damages awarded to the plaintiffs would be merely $3,261,000.  Id. at 16-17.

Thus, according to the plaintiffs, this "mathematical reality," coupled with the defendants' utter failure to marshal any actual

The plaintiffs' assertion that the defendants have not presented *any* evidence of their position is overly technical and unavailing.  "To be sure, a defendant cannot establish removal jurisdiction by mere speculation and parties can neither concede that it exists nor proselytize beliefs which, if true, would support its existence."  Guidry v. Dow Chem. Co., 2019 WL 4509490, at *10 (E.D. La. Sept. 19, 2019).  However, the parties' well-prepared filings for and against this motion, the prior settlement offer to which those filings repeatedly refer, the plaintiffs' extensive discovery into the amount in controversy issue at hand, and general experience and logic are all "evidence" that the Court may – and in fact, must – appropriately consider in resolving this motion.  Indeed, "evidence" is defined as, *inter alia*, "Something . . . that tends to prove or disprove the existence of an alleged fact," and "The collective mass of things . . . presented before a tribunal in a given dispute."  *Evidence*, BLACK'S LAW DICTIONARY (10th ed. 2014).

In this context, the Court's task is to determine where a preponderance of the evidence points, not to scrutinize the origins of such evidence.  With that said, reviewing the evidence that *is* present in the record, the Court finds that a preponderance of

---

evidence to overcome it, compels the plaintiffs' desired outcome. See, e.g., id. at 17.

such evidence suggests that the amount in controversy does exceed
$5,000,000.

This is so for two major reasons, which the Court examines in
turn.

### 1.    The Plaintiffs' Settlement Demand Letter

On August 14, 2019, class counsel Ron Austin sent the
defendants a settlement demand letter.  In the letter, Austin
"mused" that "the parameters of a possible settlement can be safely
couched in terms of a range of $60 M[ILLION] to $275 M[ILLION]."
See Guidry, 2019 WL 4509490, at *2.  Those are large numbers, and
indeed much greater than the $5,000,000.01 that must plausibly be
at stake for this Court to have jurisdiction over this case.  The
size of those numbers drove the Court to observe, in resolving the
plaintiffs' first motion to remand on other grounds, that
"[a]lthough the letter appears patently conjectural at 10 years
into litigation, the plaintiffs do make certain that [in] their
opinion, their class damages exceed the $5 million threshold for
CAFA jurisdiction."  Id. at *9.

To be sure, experience teaches that the opening salvo in a
settlement negotiation is likely to be fanciful and hyperbolized
– indeed, it would border on malpractice *not* to stake out an
aggressive initial position in the course of a settlement talk.
However, to believe that plaintiffs' counsel chose to *begin* "the

parameters of a possible settlement" at *twelve* times the statutory threshold without any reasonable basis for doing so, the Court would be forced to disbelieve its own eyes and abandon all common sense.[5]  Cf. Robertson v. Exxon Mobil Corp., 814 F.3d 236, 240 (5th Cir. 2015) ("[T]hat the removing party bears the burden of proving the amount in controversy does not mean that the removing party cannot ask the court to make common-sense inferences about the amount put at stake by the injuries the plaintiffs claim.").  The Court is neither willing nor able to do so here.

Thus, this fact provides strong evidence that the plaintiffs' action may place significantly more than $5,000,000 in plausible controversy.  Of course, if the plaintiffs truly believe their argument, they will settle for less than $5,000,000!

---

[5]    It would also require the Court to seriously question the professionalism of plaintiffs' counsel.  Cf. Guidry, 2019 WL 4509490, at *8 n.23; id. at *8 ("That plaintiffs now seek to claw back the genuineness or veracity of their letter's content speaks volumes.  Although they stop short of casting their letter as a 'sham,' they downplay the certitude of its contents by characterizing the contents as mere 'musings.'  To be sure, the letter contains a subjective and likely hyperbolized settlement demand.  Like plaintiffs' counsel now appear to concede, their 'valuation range' is not a true reflection of the objective value of the case.  However, there is absolutely no dispute that plaintiffs' counsel seemingly has a subjective belief that recoverable damages . . . range from many multiples beyond the $5,000,000 amount in controversy requirement." (footnote omitted)).

### 2.    The Likely Existence of Additional Claimants

As importantly, the plaintiffs also admit that, robust as their discovery efforts have been, there is presently no way they can identify the total number of claimants that will ultimately come forward when an award is more clearly on the horizon.  As the plaintiffs concede in their motion, their efforts to identify potential members of their class has necessarily been curtailed by the simple facts that their published notice

> made clear that no funds were due any class members; no judgment has been rendered by any court making it likely that completion of a claim form would assist the class members; no settlement has been reached with any defendant in this matter; and there was no monetary benefit to any class member in filling out the claim forms at this time.

See Mot. at 14-15.

Recall the Court's task in resolving this motion.  It is not to determine what total award the presently known claimants could garner in a judgment today,[6] but rather to determine what amount the plaintiffs' action plausibly places *in controversy*.  See, e.g., Robertson, 814 F.3d at 240 ("The required 'demonstration concerns what the plaintiff is claiming (and thus the amount in controversy between the parties), not whether the plaintiff is likely to win

---

[6]    The bulk of the plaintiffs' motion centers around this sort of inquiry.  In their motion, the plaintiffs break out their calculators to determine the amount their heretofore identified claimants would receive if certain damages figures were to apply.

10

or be awarded everything he seeks.'" (quoting <u>Berniard v. Dow Chem.</u> <u>Co.</u>, 481 F. App'x 859, 862 (5th Cir. 2010) (per curiam))).

     As the plaintiffs have conceded, it is likely that many more thousands of claimants may come forward to claim any monetary award or settlement that is ultimately achieved in this litigation.  <u>See</u> Memorandum in Support of Plaintiffs' Expedited Motion to Remand at 9-10, <u>Guidry v. Dow Chem. Co.</u>, No. 19-cv-12233 (E.D. La. Aug. 23, 2019) (arguing that the size of the toxic plume at issue allows "hundreds of thousands of claimants to be part of the class," and citing prior filings in which the plaintiffs represented that "a class was certified consisting of an estimated 200,000 or more plaintiffs from Orleans Parish" alone).   That every conceivable claimant has not *yet* been identified does not guarantee that no additional claimants *exist*.

*     *     *

     At bottom, this is a simple motion.

     The plaintiffs cannot have their cake and eat it too.  On the one hand, they have candidly (albeit aggressively) asserted that a reasonable range for a settlement of this action would begin at $60,000,000, and that "hundreds of thousands" of class members can reasonably be expected.   On the other, they assert now that the record they have created belies any notion that their suit has placed one penny more than $5,000,000 in controversy.

11

That argument is unavailing.  On the contrary, the plaintiffs'
prior statements in this Court – and to the defendants –
demonstrate an affirmative *likelihood* that well over $5,000,000 is
at stake in this decade-old class action.

Thus, in accordance with the analysis mandated by the Supreme
Court in Dart Cherokee, the Court now "decides, by a preponderance
of the evidence, [that] the amount-in-controversy requirement [of
CAFA] has been satisfied."  See 574 U.S. at 88.

Accordingly, the Court has subject matter jurisdiction over
this action, and IT IS ORDERED: that the plaintiff's second to
remand is DENIED.


                    New Orleans, Louisiana, October 28, 2020



                         _____
                              MARTIN L. C. FELDMAN
                         UNITED STATES DISTRICT JUDGE


12